Public Safety. He is originally hired in 1973. He is a warden of the women's facility in September 2007, somebody makes a complaint that he and all of his staff, his male staff, have misappropriated some materials. He is then transferred to the Oahu Community Correctional Center and placed under investigation for that. In the same month, November 06, he is informed by an Attorney General Investigator, John Wu, the investigation is completed, it is unfounded, there has been no wrongdoing. Let me help you get to the heart of the matter here. This is a Title VII claim. There is no question but that both sides agree that we are talking about protected speech. The first question I have is, what is the adverse employment action that you rely on? There is no Title VII here, we are just going on the First Amendment. The appeal is strictly First Amendment. Oh, I'm sorry, there is no Title VII claim, Your Honor. Okay. So it's a 1983 action? Yes, Your Honor, First Amendment. Alleging retaliation and violation of the First Amendment. Yes, Your Honor. So he is now in the transfer position on that investigation, but he remains in this transfer position where he is simply sitting at a desk with nothing to do after overseeing 200 inmates and a staff of 140. So he waits month after month after month and he has been told already the investigation is over. When in March, he goes to the legislature and starts disclosing all kinds of horrible things by the Department of Public Safety, inmate abuses, suicides that are covered up, workplace violence, women's uniforms being torn off by male ACOs, all kinds of monetary transferring of materials from place to place, even when you have separate budgets. And then on January 1, 2008, he sent a letter from the state telling him you are now under investigation for very serious matters for your testimony submitted to the legislature and Senator William Sparrow on October 1, 2007. So he is flat out told you are under investigation for all your testimony and all your verbal disclosures to the legislature. Counsel, can you help me with something? I understood the actual circumstances slightly different. My understanding was that the administrative investigation of your client had begun and he was reassigned by February of 2007. Is that incorrect? Not to my knowledge, Your Honor. To my knowledge, he was... That's according to S.E.R. 36. And as I understand it, the protected speech that you claim occurred in March 2007 and October 2007, which was after the alleged retaliatory action occurred. Am I missing something? It's after he had been transferred to the lesser position, correct? But he has already been told that investigation is concluded, but he remains there for three years. But the reality is, again, I'm trying to understand the facts. What I'm seeing here in the record is that the disciplinary action that was taken, which ultimately turned out to be unwarranted, had been imposed and completed before he made his testimony before the legislature. Is that incorrect? Your Honor, my understanding is that he remained at... Yes, I believe he was returned, Your Honor, but I think... Okay. So let's say that's true for a moment. How can the action, which has already occurred before he spoke, be in retaliation for what he said later? Your Honor, we have the non-promotions to positions that he was... He was the acting warden, and he applies for the position comes available, and instead he is... Those are different issues, aren't they? As I understand it, the other two people had college degrees. They did far, far better on tests. Those are separate and distinct from the issue of testimony before the legislature, aren't they? Well, Your Honor, we're alleging that it's connected, and we're alleging that it's connected because he was placed under this investigation in 07. He was denied the promotions in January. But don't you have to show a causal nexus? Yes, Your Honor. Where is that in the record? The causal nexus in the record is the same staff of wardens and assistant wardens that are making these overall decisions about promotion. He was placed in the position of warden for years. He was in charge of the facility for years. I understand that, but again, I appreciate the emotional aspect. I get that. I understand why your client would feel aggrieved. But as a matter of law, we have to tie these things. You have the burden to show these things. And what I'm struggling with is, at least with respect to his initial investigation, which I understood from your complaint that you were alleging was in direct retaliation for his testimony before the legislature. My view of the facts is that that was all completed before he ever testified before the legislature, and I gather you're not disagreeing with that. Is that correct? No, Your Honor. He was subjected to repeated investigations by the Sheriff's Office, the Internal Affairs Office, the Attorney General's Office, over and over for years for the same set of facts, and each time he was cleared. So that is part of our argument, that the timeline shows that for four years, from 1106 until he was finally cleared in 1109, that he was under investigation for the same set of facts. So is your argument a temporal inference of retaliation? We're arguing that that, in addition to the fact that it's the same wardens that he testified about that are in charge of the facilities, that he has denied these promotions. The problem that you have is you can't show any direct link between the internal affairs investigation, which resulted in no disciplinary action being taken against him. You can't show a direct connection in the denial of the promotion because the evidence in the record suggests that the oral board basically didn't grade him as well, and he wasn't as well qualified as the other two men who were being considered for the position. So it sounds to me like the best argument you have in response to Judge O'Scanlan's question is simply the timeline, that we have to draw an inference, and that's the nexus to retaliation. If he had an admission by somebody in the state's employ that, you know, we're never going to give this guy a promotion, or we're going to give him the worst jobs we can find at the prison because of the fact that he's constantly shooting his mouth off to the legislature and saying bad things about other people, I'd say, you know, great. A jury's going to have to resolve it. That's correct, Your Honor. I do not have direct evidence or proof of their intent. And under the case law, aren't you required to have that kind of evidence to prevail in your appeal? Well, Your Honor, I'm going to rely on my timeline, my temporal proximity to his testimony before the legislature, the repeated investigation. That was in March of 07, is that correct? And again in October, on October 21, 07. So March 07 and October 07, but you indicated that he was being harassed, let's say, from November of 06, which of course is prior. Well, Your Honor, I'm only relying for the First Amendment claim on the harassment that occurred after his protected speech, which would be three months later when he was denied promotions to warden. That occurred in January 08, and the last time he was signed from the legislature was October 07. Okay, but that's a three-month period, correct? And during the three months, he is continuing to be interviewed by the Sheriff's Office, the Internal Affairs Office, and the Attorney General's Office for the same set of facts. Do you claim that the – well, let me back up. Under the McDonnell-Douglas analysis, the state claims that he was denied promotion because, in every college degree, these other two people tested better. Do you claim that that business reason, if you will, is pretext? Yes, I do, certainly because he was – And on what evidence? On the evidence that he was the acting warden at the facility for years. They selected him to run the facility for years. And now in the position he's in, as the acting warden becomes available, they bring in other people who supposedly have a college degree. After he had been the warden there for years. He was the warden there. In fact, the position description itself, when the position was announced, said that, you know, mere time in grade or experience is not necessarily a guarantor that you're going to get the job, that we're going to look at other factors. I believe that's correct, John. But why put him in the position running the facility for years if later you're going to say he's not qualified? Well, there may be people who are better qualified than he is. I mean, the problem I think that Judge Smith is asking about is you've got to show that the state's otherwise legitimate business reasons for picking a better qualified warden is pretextual. And what's your evidence of pretext? My evidence is that within 12 weeks of going to the legislature and shooting his mouth off about all these atrocities, he's now no longer qualified for the position he's in. And somebody else is better qualified. Well, that's against the distinction between he's no longer qualified and that someone else is better qualified, isn't there? He's less qualified than someone else who wants the job. Okay. And what's the matter with that? That happens in state government, indeed, in private industry all the time, doesn't it? That's my evidence, Your Honor. Okay. Counsel, you're down to under four minutes. Do you want to reserve? No, sir. No choice. I can reserve. Very well. Thank you. We'll hear from the state. Good morning, Judges Tallman, O'Sconlan, and Smith. My name is Jeffrey Keating. I'm a Deputy Attorney General with the State of Hawaii, and I will be presenting the argument on behalf of the State of Hawaii Department of Public Safety. In November of 2006, a maintenance supervisor at the Women Community Correctional Center reported that the plaintiff, Malcolm Lee, and five other male adult correction officers were misappropriating construction materials and equipment from the facility. This report triggered both criminal and administrative investigations, and they are different investigations. So we have the report in November of 2006, and as you noted, Judge Smith, on February 5th of 2007, the plaintiff was reassigned to OCCC, the Oahu Community Correctional Center, and this was prior to his testimony against either Iwilani White or Clayton Frank. Now, they say timing is everything. In this case, the timing clearly defeats the plaintiff's case. And, Judge O'Sconlan, your question to Ms. Carpenter Asi about what alleged adverse acts she's claiming, my understanding of what her alleged adverse acts are, and again, in her appeal, she said she was only challenging the First Amendment claim, not the retaliation claim. But, number one, she complained about the investigations. And we take a look at the investigations. As Judge Morley stated, the criminal investigation is not done by the Department of Public Safety. It's a separate investigation conducted by the Department of Attorney General. The administrative investigation focused on allegations of employee complaints, favoritism, misuse of funding. And we know that these investigations were triggered prior to any protected speech, and there's also analysis as whether investigations themselves can constitute an adverse employment action. Does the employer have a right to investigate allegations of some type of misconduct? Okay, so the first one that they alleged was investigations. The second adverse act had to do with reassigning the plaintiff to work at OCCC while the investigations were pending. And we know from the timeline that this reassignment to OCCC occurred prior to any protected speech, so it could not be a retaliation for protected speech. And the third adverse act they allege is the non-selection to the warning position at OCCC and WCCC. And the plaintiff had alleged the selectees were less experienced and less qualified, and Mr. Lee asserted he was more qualified. But a review of the backgrounds of the applicants, the selectees, they were highly qualified. They were very experienced, and they had a college degree, which was important to this position, which Mr. Lee did not have. Did the, I guess, request for submission or advertisement make any reference to college degrees or educational background? It did, Your Honor. And I can direct you to that in the record. Just tell me where it is in the record. I'm sure I can find it. It's attached as Exhibit I to the State's Motion for Summary Judgment. In the bottom right-hand corner of your record, it says, Education, a bachelor's degree from an accredited university with either a major or a sufficient number of credit hours in appropriate subjects, which would satisfy academic requirements for a major in sociology, psychology, criminology, penology, criminal justice administration, or other related behavioral science or criminal justice fields. So, yes, it was clear that that was a requirement. However, you could substitute experience to satisfy that requirement. But if we look at, for example, Mr. Hoffman, who was the person who was selected for the OCCC position, we know Mr. Hoffman started working at the Department of Public Safety in 1984. He had 25 years on the job. He was an acting warden at another correctional facility called Weyava since 2005. Highly qualified. Again, he has a college degree. Mr. Lee does not. If we look at Mr. Patterson, who was selected for the WCCC warding position, he was working at the Department of Public Safety since 1993, 16 years on the job. He had been a long-time lieutenant at Halawa since the year 2000. And he had also been an acting warden at WCCC. And under the circumstances, given the advertisement, given the qualifications of the people to whom you've made reference, what does Mr. Lee have to show to overcome the stage showing of the second prong of McDonald-Douglas? Well, I think there'd have to be some type of nexus. Yeah. I mean, there could be some direct evidence. Some pretext, in effect. Is there any showing of pretext here? No, Your Honor, and Judge Morley noted that. There's absolutely none. In fact, the chair of the interview panel stated in his declaration, the testimony was not considered at all by the interview panel, and there was no evidence to contradict that at all. I've been brief, Your Honor, but unless you have any more questions for me, I'll turn it over to Ms. Carpenter-Asui. No questions. Thank you, counsel. Ms. Carpenter, you have some reserved time. Thank you, Your Honor. I'd just like to point out that in the first amendment legal analysis, McDonald-Douglas relates to the Title VII claims, which are not an appeal here. For the plaintiff to prove a first amendment, he must show that the adverse actions will deter a reasonable employee from engaging in protected speech. And where's the showing on that here? The case law is cited all throughout my brief, Your Honor. Well, I think very less in the record. What are you relying on is fact, unless there's an issue of material fact here. The fact is, and there's a lot of timeline with a lot of events that don't relate to the first amendment here, but give background. The crux of this case is simply he went to the legislature in March and October, and 10 to 12 weeks later he was no longer the most qualified position for the position of warden, which he had held for years. That's the crux of this case. You're basically asking us to impute motive and act to the state, right? There's no evidence tying the two together. We're relying on the timeliness of the denial of the promotions. You're asking us to impute that, because there's no, you don't have, as I think Judge Loscalo and somebody mentioned, there's no letter of somebody saying, boy, we're going to get this guy a lead. We're going to fix him. If he goes up to the legislature again, we're going to be sure that any test he takes doesn't matter. He's just toast. That's correct. We do not have a letter from them saying we're going to retaliate against you for going to the legislature and disclosing all of this horrific actions going on at the prison. No, we do not have such a letter. Well, if he testified in October and a week later he got demoted or transferred or somehow adversely treated from his employment standpoint, he might have an argument that there was a temporal connection. But here we've got three months and all of these other requirements that are in the record. How do we deal with that? We have cited a case law that says three months is not a reasonable period of time for an employer to retaliate. In fact, the court stated retaliation for a variety of reasons. Some retaliators prefer to take their time to retaliate. They may wait until the victim is especially vulnerable, until especially hurtful action becomes possible, or they may wait until they think the last of time disguises their true motivation. This has resulted in a first-degree case. We should be particularly sensitive to this last point for if we establish a personal rule that a specified time period is too long to support an increase of retaliation, we'll advise retaliators we'll simply wait until that period has passed. Then provide the counsel, even Judge Fletcher, in writing that language, acknowledged that, you know, each case turns on its facts. And I think the trouble I'm having with your factual timeline is that some of the key acts that you allege to be retaliation occurred prior to the speech. Aaron, I'm not alleging this is retaliation. Those are just the timeline, the facts. We're referring to them as background facts, but in essence, they are facts that undercut the inference that you're asking us to draw from your temporal inference argument. Those go to the Title VII claim, which we're not appealing here. We're only appealing the First Amendment claim. He goes to legislature 10 or 12 weeks later. He's no longer the most qualified person for the positions held for years as a woman. That's the whole case here. I think we understand your argument. Your time has expired. Thank you. Thank you. The case just argued will be submitted for decision, and we will hear argument next in Roe v. The Northern Mariana Island Retirement Fund.
judges: O'scannlain, Tallman, Smith